UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

INETTE D. HEREDIA,

                      Debtor.

-----------------------------------------------------X

INETTE D. HEREDIA,

                      Appellant,

      v.

KRISTA M. PREUSS,

                      Appellee.

No. 23-CV-403 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Michael A. Koplen, Esq.
Koplen Law Firm
New City, NY
*Counsel for Appellant Inette D. Heredia*

Thomas C. Frost, Esq.
Office of the Standing Chapter 13 Trustee, S.D.N.Y.
White Plains, NY
*Counsel for Appellee Krista M. Preuss*

KENNETH M. KARAS, United States District Judge:

Debtor Inette D. Heredia ("Appellant") appeals from the December 30, 2022 Order (the "Order") of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), dismissing her voluntary bankruptcy case under Chapter 13 of the Bankruptcy Code ("Chapter 13") for cause pursuant to 11 U.S.C. § 1307(c) ("§ 1307(c)"). (*See* Not. of Appeal 1

(Dkt. No. 1).)[1]  For the reasons stated below, this appeal is dismissed without prejudice, the

Order is vacated, and the case is remanded to the Bankruptcy Court.

## I.  Background

### A.  Proceedings Before the Bankruptcy Court

On February 7, 2018, Appellant, through counsel, filed a voluntary Chapter 13

bankruptcy petition in the Bankruptcy Court.  (*See* Appellant's App'x A1 (Dkt. No. 12-1);

Appellee's Suppl. App'x ("Appellee's App'x") R1–52 (Dkt. No. 16-1).)[2]  Thereafter, Krista M.

Preuss ("Appellee") was assigned to be the Chapter 13 Standing Trustee in Appellant's

bankruptcy case. (*See* Appellant's App'x A1.)[3]  On April 26, 2018, Appellant filed an amended

bankruptcy plan (the "Plan"), (*see* Appellee's App'x R53–59), which the Bankruptcy Court

confirmed on June 25, 2018, (*id.* at R60)  Pursuant to the Plan, Appellant was required to make

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper right corner of each page.

[2] When citing to Appellant's Appendix, the Court will cite to the internal pagination provided by Appellant at the bottom-center of each page (e.g., A1).  Likewise, when citing to Appellee's Supplemental Appendix, the Court will cite to the internal pagination provided by Appellee at the bottom-center of each page (e.g., R1).

[3] Chapter 13 "provides bankruptcy protection to individuals with regular income whose debts fall within statutory limits"; they are "permitted to keep their property, but they must agree to a court-approved plan under which they pay creditors out of their future income."  *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010) (alteration adopted) (quotation marks and citations omitted); *see also Bullard v. Blue Hills Bank*, 575 U.S. 496, 498 (2015) (explaining that a Chapter 13 proceeding "affords individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property").  In Chapter 13 cases, a Chapter 13 Standing Trustee (in this case, Appellee) that is duly appointed by the U.S. Trustee, among other things, oversees the debtor's performance under such a court-approved plan.  *See generally* 11 U.S.C. § 1302(a)–(b).

The Court notes that, effective June 1, 2023, Thomas C. Frost—who appears on behalf of Appellee here—has been assigned to be the Chapter 13 Standing Trustee in Appellant's underlying bankruptcy case.  (*See* Not. of Reassignment of Chapter 13 Standing Trustee (Dkt. No. 40, 18-22230 Dkt.).)

Citations to "18-22230 Dkt." reflect citations to the Bankruptcy Court's docket.

60 monthly payments to Appellee in the amount of $134.24.  (*See id.* at R54.)  The Plan also required that, for the duration of the Plan, all of Appellant's tax refunds in excess of $1,500.00 be paid to Appellee.  (*See id.*)[4]

On October 17, 2022, Appellee moved to amend the Plan under 11 U.S.C. § 1329 ("§ 1329") or, in the alternative, to dismiss the case under § 1307(c).  (Appellant's App'x A3– 11.)  In connection with this motion (the "Motion"), Appellee asserted that, upon review of Appellant's "2018, 2019, 2020[,] and 2021 Federal and New York State income tax returns," the Appellee determined that Appellant's "adjusted gross household income for tax year 2021 was $155,520.00."  (*Id.* at A6.)  According to Appellee:

> This is an increase in annual income of $37,731.00 from the filing of the 2020 tax returns (where the adjusted gross income was $117,789.00), an increase in annual income of $36,174.00 from the filing of the 2019 tax returns (where the adjusted gross income was $119,346.00), and an increase in annual income of $76,820.00 from the filing of 2018 tax returns (where the adjusted gross income was $78,700.00)[.]  The Debtor's substantial increase in income *has not* [] p*reviously been disclosed* to the [Bankruptcy] Court.

(*Id.* (emphasis added).)  Based on this allegedly undisclosed increase in income, Appellee argued that Appellant "should have paid approximately $73,542.24" to her under the Plan.  (*Id.*) Accordingly, Appellee urged the Bankruptcy Court to modify the Plan "to increase the [] [P]lan payments to pay all [Appellant's] disposable income [or] the payment of all claims in full . . . ." (*Id.* at A9.)  Alternatively, Appellee asserted that "if the [Bankruptcy] Court finds modification of the Plan insufficient under these facts, [it] may dismiss a case for cause [pursuant to § 1307(c)], including lack of good faith in filing the petition . . . ."  (*Id.* at A8.)

---

[4] According to Appellee, Appellant ultimately paid $14,968.40 under the Plan.  (*See* Appellee's Br. 9.)

Appellant filed an opposition to Appellee's Motion on December 2, 2022. (*See id.* at A12–14; *see also* Opp'n (Dkt. No. 29, 18-22230 Dkt.).) In her opposition, Appellant argued that "[t]here [was] no basis for dismissal" because she had "faithfully complied with each and every requirement of her Plan, which [was then] in its 58th month of a 60-month term, ha[d] made all Plan payments to date, and ha[d] provided the [Appellee] with her tax returns on an annual basis." (Appellant's App'x A12.) In addition, Appellant argued, inter alia, that modification would be inappropriate because, although she had had an increase in income, she also had a commensurate increase in expenses "necessitated by her move to Manhattan and the incurring of additional obligations over what she had in 2018." (*Id.* at A12–13.) Along with her opposition, Appellant filed updated budget forms ("Schedules I and J") reflecting her new income and purportedly increased expenses. (Amended Schedules I and J (Dkt. No. 29-1, 18-22230 Dkt.).)[5]

The Bankruptcy Court held oral argument via videoconference on Appellee's Motion on December 7, 2022. (*See* Appellant's App'x A22–28.) Appellee began by noting that Appellant had filed amended Schedules I and J and taking issue with certain expenses listed therein. (*Id.* at A23–24.)[6] Appellee concluded that Appellant earned "significantly more income that was not contemplated at the time of [the Plan's] confirmation" and that her amended Schedules I and J "exemplif[y] that [she] is spending all of that extra income on items that are not reasonably necessary." (*Id.* at A24.) In response, Appellant reiterated that her expenses had increased "a

---

[5] Appellant separately filed her updated Schedules I and J as a standalone filing on December 5, 2022. (Amended Schedules I and J (Dkt. No. 30, 18-22230 Dkt.); *see also* Appellant's App'x A15–18.)

[6] In particular, Appellee argued that it was "concerning" that Appellant's monthly "entertainment expense[s]" had "went up from $150.00 to $392.00," her car payment went from $320.00 to $822.00 per month, and her "medical and dental expenses" went from $200.00 to $813.00 per month. (Appellant's App'x A23; *see also id.* at A23–24 ("So, . . . just with those three different line items on the new budget, that's $1,357.00 additional dollars [per month.]").)

lot" because "she got a new job, she moved to Manhattan, and she[ was] taking care of some other family member." (*Id.*)  Additionally, Appellant pointed out that there were only around two payments remaining under the Plan, such that this proceeding was occurring "very, very late in the game." (*Id.* at A24–25.)

In response to Appellant's late-in-the-game argument, the Bankruptcy Court interjected, seemingly to suggest that the timing of Appellee's Motion was attributable to *Appellant's* belated provision of her tax returns to Appellee. (*Id.* at A25.)  After the Bankruptcy Court asked, "when [Appellant's] tax returns [were] given to [Appellee,]" Appellee represented that Appellant had provided her tax returns from 2018 through 2021 and that "[t]hey were received at the end of August [2022.]" (*Id.*)[7]  At that point, the Bankruptcy Court stated, with no further explanation, that Appellant "must pay all of the $73,542.24 of disposable income back to [Appellee] or the case will be dismissed." (*Id.*)[8]  Perhaps in an effort to justify the Bankruptcy Court's determination, Appellee stated, "[a]nd again, in [the Motion], . . . it does indicate that . . . an increase in [Appellant's] income does put [her] out of compliance with [her] [P]lan [under 11 U.S.C. §] 1322(a)(1)," to which the Bankruptcy Court responded, "[t]hat's right." (*Id.* at A26.)

In light of the Bankruptcy Court's apparent ruling, Appellant asked whether she was "foreclosed from presenting any evidence of her [expenses.]" (*Id.* at A27 ("[I]f I understand the

---

[7] So the record would be clear, Appellee subsequently clarified that "the 2021 tax returns were received in August [2022]" and that the prior tax returns for 2018 through 2020 were received timely. (Appellant's App'x A25–26.)

[8] When Appellant's counsel asked "how [the Bankruptcy Court] reached [$73,542.24,]" Appellee stated that it was referenced in the Motion and that "[i]t is the calculation that we anticipate, based on the Debtor's monthly disposable income average for 2021, the amount that should have been available as disposable income over the course of that 12-month period." (Appellant's App'x A27.)  The Bankruptcy Court further explained that that figure was "from the tax returns." (*Id.*)

case law correctly, any decision based on a motion like this has to take into consideration both the increased income and the increased expenses.").)  The Bankruptcy Court stated, "those expenses were not put out until [the Motion] was filed," and that "[b]oth [Schedules I and J were not] even filed until [the Motion] was filed, . . . so you didn't change it before you had to have a motion.  You should've amended [Schedules] I and J." (*Id.*)  Then, the Bankruptcy Court changed tack, stating that Appellant "should've amended the plan" and that it was "going to go ahead and dismiss [the case.]" (*Id.* at A28 ("If you didn't go ahead and amend the [Schedules] I and J to show that there were more expenses, that's on [Appellant]."].)  Insofar as it explained its ruling of dismissal, the Bankruptcy Court stated, "[t]his is based on the tax returns.  [Schedules] I and J [were not] amended until such time as this [M]otion." (*Id.*)

On December 30, 2022, the Bankruptcy Court issued its Order dismissing the case for cause pursuant to § 1307(c) "for the reasons stated on the record at the December 7, 2022 hearing." (*Id.* at A19.)

B.  Procedural History

The Court describes the procedural history of this Action only as relevant to deciding the instant Appeal.  Appellant filed her Notice of Appeal on January 17, 2023. (*See* Not. of Appeal.) On March 30, 2023, Appellant filed her brief and accompanying papers.  (Appellant's Br. (Dkt. No. 12); Appellant's App'x.)[9]  After requesting and receiving an extension of time to file her

---

[9] Appellant initially filed a brief and appendix on March 4, 2023.  (*See* Dkt. No. 8.) However, in doing so, Appellant did not comply with Federal Rule of Bankruptcy Procedure 8018, which sets forth certain requirements for appendices in bankruptcy appeals, *see* Fed. R. Bankr. P. 8018(b)–(d), or with this Court's Individual Rules of Practice, *see* Individual Rules of Practice of the Honorable Kenneth M. Karas § VI ("Briefs [filed in bankruptcy appeals] must be submitted in accordance with Federal Rule of Bankruptcy Procedure 8018.").  (*See also* Letter from Thomas C. Frost, Esq. to Court (Mar. 21, 2023) (Dkt. No. 10) (identifying these issues for the Court).)  Accordingly, the Court provided Appellant with an additional 30 days to file a compliant brief and appendix, and also granted Appellee a corresponding extension of time to file her brief.  (*See* Order (Dkt. No. 11).)

brief, (*see* Dkt. Nos. 14–15), Appellee filed her brief in opposition and accompanying papers on

May 16, 2023, (Appellee's Br. (Dkt. No. 16); Appellee's App'x).  Appellant did not file a reply

brief.  (*See generally* Dkt.)

## II.  Discussion

### A.  Standard of Review

District courts have jurisdiction to review final bankruptcy orders.  *See* 28 U.S.C.

§ 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals . . .

from final judgments, orders, and decrees . . . of bankruptcy judges . . . ." (footnote omitted)); *In*

*re DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011) (noting that district courts have jurisdiction

to "review all final judgments, orders, and decrees of the bankruptcy courts" (citation omitted)).

"[A] bankruptcy judge's order is final if it completely resolve[s] all of the issues pertaining to a

discrete claim, including issues as to the proper relief."  *Pegasus Agency, Inc. v. Grammatikakis*

*(In re Pegasus Agency, Inc.)*, 101 F.3d 882, 885 (2d Cir. 1996) (quotation marks omitted).  The

Bankruptcy Court's Order, which dismissed Appellant's Chapter 13 bankruptcy case, is

unquestionably a reviewable final order.  *See Procel v. U.S. Tr. (In re Procel)*, 467 B.R. 297, 300

(S.D.N.Y. 2012) ("District courts have jurisdiction to review . . .orders to dismiss or convert

Chapter 13 bankruptcy cases[] under 28 U.S.C. § 158(a)(1).") (collecting cases).

Although district courts typically review a bankruptcy court's findings of fact for clear

error and conclusions of law de novo, *see, e.g., Am. Home Assurance Co. v. Enron Nat. Gas*

*Mktg. Corp. (In re Enron Corp.)*, 307 B.R. 372, 378 (S.D.N.Y. 2004), "[a] [b]ankruptcy [c]ourt's

order dismissing a case is reviewed under an abuse of discretion standard," *Holt v. JPMorgan*

*Chase Bank, N.A.*, No. 18-CV-3073, 2019 WL 452056, at *1 (S.D.N.Y. Feb. 5, 2019) (quoting

*Lippman v. 340 E. 93rd St. Corp.*, No. 98-CV-6988, 1999 WL 97903, at *2 (S.D.N.Y. Feb. 24,

1999)); *accord Blaise v. Wolinsky (In re Blaise)*, 219 B.R. 946, 949–50 (B.A.P. 2d Cir. 1998)

("Use of the word 'may' [in § 1307(c) ] indicates that the decision to dismiss . . . is committed to the discretion of the bankruptcy court."); *In re Murray*, 565 B.R. 527, 530 (S.D.N.Y. 2017) ("Because a bankruptcy court's decision to dismiss for cause is guided by equitable principles, it is reviewed for abuse of discretion." (citing *In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007))). "A bankruptcy court exceeds its allowable discretion where its decision (1) 'rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding,' or (2) 'cannot be located within the range of permissible decisions,' even if it is 'not necessarily the product of a legal error or a clearly erroneous factual finding.'" *In re Smith*, 507 F.3d at 73 (alteration adopted) (quoting *Schwartz v. Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003)). "As to the factual findings that underlie that decision, an abuse of discretion is deemed to occur only when such findings are clearly erroneous," *In re Blaise*, 219 B.R. at 950, that is, where there is a "definite and firm conviction that a mistake has been committed," *Anderson v. Bessemer City*, 470 U.S. 564, 573, (1985).[10]

   B.  Analysis

   "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  *Hyde Park v. DeFlora Lake Dev. Assocs., Inc. (In re DeFlora Lake Dev. Assocs., Inc.)*, 629 B.R. 354, 358 (S.D.N.Y. 2021)

---

   [10] In her brief, Appellant asserts that the Court should apply a de novo standard of review because "the [B]ankruptcy [C]ourt held no hearing and basically granted summary judgment." (Appellant's Br. 9.)  However, somewhat confusingly, Appellant proceeds to undermine her own assertion by citing caselaw from the Sixth and Eighth Circuits, suggesting that the Court should apply an abuse-of-discretion standard of review.  (*See id.* at 9–10.)  In any event, the single case Appellant relies upon is inapposite, because that case involved an adversary proceeding in which the trustee *did* move for summary judgment and the order under review was the bankruptcy court's decision granting summary judgment.  *See Kansler v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 22-CV-3914, 2022 WL 16751911, at *5 (S.D.N.Y. Nov. 7, 2022).  Because the instant appeal presents an altogether different situation—i.e., the Bankruptcy Court's decision dismissing Appellant's voluntary Chapter 13 bankruptcy case for cause pursuant to § 1307(c)—the Court will not apply an inapplicable standard of review.

(quotation marks omitted) (quoting *In re Bernard L. Madoff Inv. Sec.*, LLC, No. 15-CV-1151, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016)).[11]  For example, "[w]here the record does not reflect 'the reasoning for the bankruptcy court's decision,' the Court may remand for further proceedings."  *Id.* (quoting *In re Kaye*, No. 11-CV-1674, 2011 WL 5024345, at *3 (E.D. La. Oct. 20, 2011)); *accord Found. Cap. Res., Inc. v. Mount Moriah Afr. Methodist Episcopal Church, Inc.*, No. 20-CV-2497, 2022 WL 1749193, at *5 (E.D.N.Y. May 31, 2022) ("It may well be that the [b]ankruptcy [c]ourt appropriately considered the relevant factors and applied the law correctly, but the record does not contain sufficient information to permit this [c]ourt to make that determination."); *Ridgewood Savings Bank v. Depietto (In re Depietto)*, 20-CV-8043, 2021 WL 3287416, at *9 (S.D.N.Y. Aug. 2, 2021) (similar); *see also Wickam v. Ivar (In re Werner)*, No. 08-BK-11153, 2015 WL 5048151, at *6 (B.A.P. 9th Cir. Aug. 25, 2015) (holding that "[a]dditional findings are necessary here" and noting "the requirement to make specific findings"); *Matrix IV, Inc. v. Am. Nat'l Bank (In re S.M. Acquisition Co.)*, No. 03-CV-7072, 2004 WL 1151575, at *4 (N.D. Ill. Apr. 29, 2004) (remanding "to the [b]ankruptcy [c]ourt for further evidentiary proceedings, if necessary, and for a more specific statement of its reasons"); *cf. Madison Nat'l Bank v. Chiapelli*, 131 B.R. 354, 358 (E.D. Mich. 1991) (remanding "for

---

[11] Although "the quoted language, formerly found in Rule 8013, is no longer contained in the Federal [] Rules of [Bankruptcy] Procedure, 'logic still compels the same conclusion with respect to the appellate powers of the [d]istrict [d]ourt.'"  *In re DeFlora*, 629 B.R. at 358 n.5 (quoting *In re Madoff*, 2016 WL 183492, at *8 n.14).

In addition, the Court notes that vacatur is an appropriate avenue for district courts to take when reviewing bankruptcy court orders in an appellate capacity.  *See, e.g.*, *Fisher Bros. Mgmt. Co. LLC v. Genco Shipping & Trading Ltd. (In re Genco Shipping & Trading Ltd.)*, 550 B.R. 676, 682 (S.D.N.Y. 2015) (vacating order and remanding to bankruptcy court where it was "unclear from the [b]ankruptcy [c]ourt [o]pinion, and from the order itself, to what extent the [b]ankruptcy [c]ourt relied on erroneous legal conclusions or findings of fact"); *Rockstone Cap. LLC v. Metal*, 508 B.R. 552, 562-63 (E.D.N.Y. 2014) (vacating order and remanding to bankruptcy court for further factual development).

sufficient explanation of the form of the order entered"). The Court finds that the Bankruptcy Court did not adequately explain its ruling dismissing Appellant's case for cause and that the record does not permit it to determine whether or not the Bankruptcy Court abused its discretion. Therefore, the Court remands this case for further proceedings.

As an initial matter, the Court notes that Appellant's arguments on appeal—which mirror her arguments in opposition to Appellee's Motion below, (*see* Appellant's App'x A12–14)—are misplaced because they focus entirely on the question of *modification* under § 1329, rather than the actual basis for the Order under review—*dismissal* under § 1307(c). (Appellant's Br. 11–15; *see also* Appellant's App'x A19 (Order dismissing "the case for cause pursuant to" § 1307(c)).) Indeed, Appellant does not discuss or even cite § 1307(c) *once* in her appellate brief. (*See* Appellant's Br. at 5.)[12]

Nevertheless, the Court declines to affirm the Bankruptcy Court's Order on the record before it. Aside from pointing to deficiencies in Appellant's arguments, (*see* Appellee's Br. 19–21), Appellee's arguments on appeal—which amount to a post hoc attempt to rehabilitate the Bankruptcy Court's insufficient explanation for its decision to dismiss Appellant's case—focus on the fact that the Bankruptcy Court did not abuse its discretion when dismissing Appellant's case for cause "due to [her] delay in providing the 2021 tax returns to [Appellee,]" (*id.* at 13–17.)[13]

_____

[12] To a certain degree, Appellant's confusion is understandable given that the Bankruptcy Court initially purported to rule that it was modifying the Plan such that Appellant had to "pay all of the $73,542.24 of disposable income back to [Appellee] or" face dismissal. (Appellant's App'x A25.)

[13] Appellee also argues that Appellant "became out of compliance with her plan under 11 U.S.C. § 1322(a)(1) by delaying submission of the 2021 tax returns to [Appellee,] frustrating any meaningful attempt by [Appellee] to seek modification of the plan due to the substantial increase in income prior to the case expiring in February 2023." (Appellee's Br. 17–19.) In support of

To be sure, Chapter 13 provides that "on request of a party in interest or the United States trustee and after notice and a hearing, the court may . . . dismiss a case under this chapter . . . for cause." 11 U.S.C. § 1307(c). Section 1307(c) further provides a non-exhaustive list of 11 grounds for "for cause" dismissal, including, as relevant here, "unreasonable delay by the debtor that is prejudicial to creditors" and "material default by the debtor with respect to a term of a confirmed plan." *Id.* § 1307(c)(1), (6).

In Appellee's view, Appellant's "delay in providing [her] 2021 tax returns was certainly an unreasonable delay prejudicial to creditors . . . and was a material default under the terms of the confirmed plan," such that dismissal for cause was proper under § 1307(c)(1) and § 1307(c)(6), respectively. (Appellee's Br. 15.) Although this Court "may affirm on any ground that finds support in the record," *Wenegieme v. Macco*, 580 B.R. 17, 21 (E.D.N.Y. 2018) (citation omitted), the record simply does not permit the Court to affirm on the basis that Appellee urges or, indeed, *any* basis.

With respect to the allegedly delayed provision of Appellant's 2021 tax returns, Appellee appears to have first raised that issue during the December 7, 2022 oral argument. (*See* Appellant's App'x A25.)[14] However, the record reflects nothing beyond Appellee's say-so in support of this issue. (*See id.* (Appellee's representation to the Bankruptcy Court that the 2021 tax returns were "received at the end of August [2022]"); *see also* Appellee's Br. 10 (Appellee's representation to this Court that Appellant "was untimely in providing her 2021 tax returns to

---

that argument, Appellee cites just one case. (*See id.* at 17–18 (citing *In re Salpietro*, 492 B.R. 630, 639 (Bankr. E.D.N.Y. 2013)).) And the Court notes that the bankruptcy court in *In re Salpietro* was analyzing a motion to "upwardly modify the [d]ebtors' confirmed chapter 13 plan" under § 1329, *not* a motion to dismiss pursuant to § 1307(c). 492 B.R. at 632.

[14] The Court notes that Appellee did not appear to raise the timeliness of the 2021 tax returns in its affirmation in support of the Motion. (*See generally* Appellant's App'x A4–9.)

[Appellee] on or about August 28, 2022").)  In other words, there is no evidence in the record tending to reveal when, in fact, Appellee received Appellant's 2021 tax returns and moreover, it is unclear to the Court whether Appellant disputes the timing of Appellee's receipt of those tax returns.[15]

More generally, although the Order dismissing Appellant's case incorporates by reference "the reasons stated on the record [on] December 7, 2022," (Appellant's App'x A19), the Bankruptcy Court's reasoning during that hearing is not a model of clarity.  Specifically, after purporting to modify the Plan to require Appellant to pay "the $73,542.24 of disposable income," (*id.* at A25), the Bankruptcy Court changed course, ruling instead that "I'm going to go ahead and dismiss [the case,]" (*id.* at A28).  The Bankruptcy Court then had the following exchange:

> [The Court:]  That was in January of 2021.  If you didn't go ahead and amend the [Schedules] I and J to show that there were more expenses, that's on [Appellant.]
>
> [Appellant's Counsel:]  Based on what?  Based on the tax returns that she provided?
>
> [The Court:]  Absolutely.  This is based on the tax returns.  [Schedules] I and J [were]'t amended until such time as th[e] [M]otion was filed.
>
> [Appellant's Counsel:]   That's because that was the first time it came to my attention.
>
> [The Court:]  No.  You should've done it when you filed those tax returns and shown what you had, so no.

---

[15] Seemingly misunderstanding which tax returns are at issue, on appeal Appellant exclusively focuses on the timeliness of her provision of her *2020* tax returns to Appellee.  (*See* Appellant's Br. 7–8, 13, 15.)

(*Id.*)[16]  That exchange appears to reflect the entirety of the Bankruptcy Court's rationale for its decision to dismiss Appellant's case for cause.

In short, the Bankruptcy Court's decision to dismiss Appellant's Chapter 13 bankruptcy case for cause may have been an appropriate exercise of its discretion, but the Court can neither discern the Bankruptcy Court's reasoning behind its December 30, 2022 Order, nor affirm it anyway based on the record as it stands.  Thus, remand is proper here.  *See Found. Cap. Res., Inc*, 2022 WL 1749193, at *5 (coming to a similar conclusion before remanding a case to the bankruptcy court); *In re Kaye*, 2011 WL 5024345, at *2–3 (remanding to the bankruptcy court "for an illumination of th[at] court's analysis through some formal or informal statement of reasons").

### III.  Conclusion

For the reasons stated above, this appeal is dismissed without prejudice, the Bankruptcy Court's December 30, 2022 Order is vacated, and the case is remanded to the Bankruptcy Court for further proceedings, if necessary, and for further explanation of its reasoning with respect to is decision to dismiss this case for cause pursuant to § 1307(c).  The Clerk of the Court is respectfully requested to close this case.

SO ORDERED.

Dated:   February 20, 2024
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge

---

[16] As a further example of how unclear the Bankruptcy Court's reasoning is, based on the record before it this Court has no way of knowing what the Bankruptcy Court was referencing when it mentioned "January of 2021."  (Appellant's App'x A28.)